# DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. CROIX

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal Action No. 2016-0021 |
| v. ) | |
| ) | |
| NICOLETTE ALEXANDER, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**Attorneys:**
**Alphonso G. Andrews, Esq.,**
St. Croix, U.S.V.I.
**Meredith Jean Edwards, Esq.,**
St. Thomas, U.S.V.I.
    *For the United States*

**John K. Dema, Esq.,**
St. Croix, U.S.V.I.
    *For Defendant Nicolette Alexander*

## MEMORANDUM OPINION

**Lewis, Chief Judge**

THIS MATTER comes before the Court on Defendant Nicolette Alexander's ("Defendant" or "Alexander") "Motion to Dismiss Due to Pre-Indictment Delay and Spoliation of Evidence" (Dkt. No. 347) ("Motion to Dismiss"); the Government's Opposition thereto (Dkt. No. 392); and Defendant's Reply (Dkt. No. 397). For the following reasons, the Court will deny Defendant's Motion to Dismiss.

### I. BACKGROUND

#### A. Factual Background

On September 15, 2016, the Government filed a 119-count Indictment against Alexander and nine Co-Defendants charging them with Conspiracy to Defraud the United States, in violation

of 18 U.S.C. § 286, and Theft of Government Property in violation of 18 U.S.C. § 641.[1] Nine of the ten Defendants—including Alexander—were also charged with Aggravated Identity Theft in violation of 18 U.S.C. § 1028A(1). (Dkt. No. 1).[2] The Government filed a Superseding Indictment on October 5, 2018 (Dkt. No. 477). Alexander's challenge in the instant motion is to the Original Indictment.[3]

According to the Affidavit of Special Agent Stephen E. Wagner ("Agent Wagner") of the United States Treasury Department, Internal Revenue Service ("IRS") Criminal Investigation, which was submitted in support of the Complaint, this case arises from an investigation conducted by the IRS into Defendants' alleged roles in filing fraudulent income tax claims with the United States and their alleged receipt of stolen funds as a result of those filings. (Criminal Action No. 16-mj-00024, Dkt. No. 1-1 ¶ 4). Agent Wagner stated that on July 12, 2012, a Source of Information ("SOI") reported that "a group of individuals were involved in a scheme to file false tax returns with the IRS using stolen identities." *Id*. ¶ 5. Some of these individuals were identified as alleged participants in the scheme through the refunds that were allegedly deposited into their bank accounts. *Id*.

The Superseding Indictment delineates the alleged mechanics of the scheme. All Defendants were known to each other as friends or associates and all resided in the U.S. Virgin

---

[1] Alexander's nine Co-Defendants are: Joanne V. Benjamin, Sylvia P. Benjamin, Lynell Hughes, Thema Liverpool, Jacinta A. Gussie, Indica Greenidge, Nisha Brathwaite, Darleen Thompson, and Sheba Rashida Young. *See* Dkt. No. 1 at 18.

[2] The Government commenced this action by filing a Criminal Complaint on July 22, 2016. (Criminal Action No. 16-mj-00024, Dkt. No. 1). The subsequent Indictment was originally filed under seal (Dkt. No. 1), and was unsealed upon the Government's motion on September 27, 2016 (Dkt. No. 25).

[3] Defendants have challenged the Superseding Indictment by separate motion.

Islands. (Dkt. No. 477 at 1). The scheme allegedly involved: (1) the acquisition of Personal Identifying Information ("PII") of individuals (i.e. name, social security number and date of birth); 2) the acquisition of bank account and prepaid debit card numbers for the deposit of falsely claimed refunds; 3) the filing of tax returns with a designation of refunds to the acquired bank accounts or debit cards; and 4) the withdrawal of illegal refund deposits. *Id*. at 3. Each Defendant allegedly participated in one or more of these phases. *Id*. It is alleged that, in furtherance of the scheme, Defendants acquired PII of numerous individuals—some without the individuals' knowledge or consent; caused tax returns from 2010 and 2011 to be electronically filed with the IRS using the other individuals' personal information; falsified information concerning the income earned, tax withholding amount, credits, address, employer, occupation, and other information; and used the same information on multiple tax returns. *Id*. at 4. Defendants then allegedly designated bank accounts or prepaid debit cards for receipt of the refund amounts. *Id*. Once the refunds were deposited, Defendants withdrew these amounts, spent them using debit cards, or transferred them to other accounts for personal use. *Id*. As a result of the scheme, Defendants allegedly received hundreds of thousands of dollars in illegal tax refunds. *Id*.

In the instant Motion, Alexander argues that she has suffered "actual substantial prejudice" due to the Government's pre-indictment delay," because "potentially exculpatory evidence" consisting of ATM and other surveillance videos from the Banco Popular banks where the allegedly fraudulent tax refund amounts were deposited were destroyed. (Dkt. No. 347 at 1, Dkt. No. 517 at 1 n.1). According to Alexander, these videos consisted of "footage" that Agent Wagner referenced during their phone interview on September 28, 2016, which "led her to believe that the Government had video footage showing someone withdrawing multiple fraudulent refunds from her [Banco Popular] bank account." (Dkt. No. 347 at 7).

Alexander contends that because the Government commenced its investigation into this matter on July 2012 but did not file an Indictment until more than four years later, on September 15, 2016, *id*. at 7, the video footage has been destroyed pursuant to the bank's one-year retention policy. *Id*. at 8. Because of the pre-indictment delay and consequent destruction of the footage, Alexander claims that she is bereft of any other means to "prove that someone else had access to her bank account and withdrew the fraudulent refunds at issue . . ." (Dkt. No. 347 at 7-8; Dkt. No. 397 at 1).

Alexander further argues that the Government knowingly and deliberately, or at the least, recklessly, failed to preserve the potentially exculpatory video surveillance, notwithstanding that it knew of the potentially exculpatory value of the evidence before it was destroyed. (Dkt. No. 347 at 6, 9; Dkt. No. 397 at 1-2). Alexander therefore claims that her due process rights have been violated. (Dkt. No. 397 at 4).

In opposition to Alexander's Motion, the Government maintains that the delay in this case was not the product of deliberate or reckless conduct. Rather, the Government contends that the delay was "entirely permissible, occasioned as it was by the need to conduct further investigation into the entire scope of the criminal scheme law enforcement had discovered, and the need thereafter of the single AUSA assigned to the matter to review the materials establishing the fraud." (Dkt. No. 392 at 9).[4]

The Government further contends that Alexander has failed to establish a due process violation as a result of any alleged failure by the Government to preserve exculpatory evidence. (Dkt. No. 392 at 12-13). According to the Government, "Alexander has not shown that the

---

[4] According to the Government, its investigation involved analyzing approximately 500 false tax returns filed as part of the scheme, interviewing numerous individuals whose identities were used to file the fraudulent tax returns, and serving 29 grand jury subpoenas. (Dkt. No. 392 at 2-3).

4

[G]overnment even knew about the existence of the surveillance video (or the likelihood thereof) in time for it to seek to preserve it, let alone that it would have had any reason to believe that any such video evidence would be exculpatory." *Id*. at 12.

## II. DISCUSSION

Based on claims of pre-indictment delay and spoliation of evidence in violation of her Due Process rights, Alexander has moved the Court to dismiss the Indictment, or in the alternative, to suppress all evidence against her, or adopt appropriate jury instructions at trial. (Dkt. No. 347 at 1). The Court will deny the requests in Alexander's Motion to Dismiss.

### A. Pre-Indictment Delay

Alexander claims that she has suffered "actual substantial prejudice due to the Government's pre-indictment delay," because of the destruction of "potentially exculpatory evidence" from the Banco Popular banks where the allegedly fraudulent tax refund amounts attributed to her were deposited. (Dkt. No. 397 at 1).[5] The Court finds Alexander's argument unpersuasive in light of the record before it.

#### 1. Applicable Legal Principles

Although "the applicable statute of limitations . . . is usually considered the primary guarantee against bringing overly stale criminal charges," *United States v. Ewell*, 383 U.S. 116, 122 (1966); *United States v. Otto*, 742 F.2d 104, 107 (3d Cir. 1984) (same), the Fifth Amendment prohibits prosecution—even within the statute of limitations period—when a defendant is subjected to a pre-indictment delay "sufficiently oppressive" to violate the Due Process Clause.

---

[5] According to the Indictment, Alexander was charged with five counts of "Theft of Government Money," which pertained to her alleged conduct in filing false tax returns, directing the refunds to be deposited into her Banco Popular account, and withdrawing such funds. (Dkt. No. 477 at 21). The last time that a fraudulent refund was allegedly deposited into her account is March 7, 2012. *Id*. The Indictment was filed on September 15, 2016. (Dkt. No. 1).

5

*United States v. Thomas*, 2009 WL 4015420, at *12 (W.D. Pa. Nov. 19, 2009) (citing *United States v. Marion,* 404 U.S. 307, 324 (1971)); *see also United States v. Lovasco*, 431 U.S. 783 (1977) ("[statutes of limitations] do not fully define a defendant's rights with respect to events antedating the indictment, and the Due Process Clause has a limited role to play in protecting against oppressive delay"); *United States v. Sebetich*, 776 F.2d 412, 430 (3d Cir. 1985) ("the Due Process Clause of the Fifth Amendment protects defendants against oppressive pre-indictment delay within the applicable limitations period."). However, "dismissal of the prosecution of cases on the basis of pre-indictment or pre-accusation delay is generally not favored." *Gov't of Virgin Islands v. Moncayo*, 1994 WL 594702, at *5 (D.V.I. Aug. 25, 1993); *see also Snyder v. Klem*, 438 F. App'x 139, 141 (3d Cir. 2011) ("the Due Process Clause does not permit courts to abort criminal prosecutions simply because they disagree with a prosecutor's judgment as to when to seek an indictment") (quoting *Lovasco,* 431 U.S. at 790).

In the Third Circuit, to warrant a dismissal based on pre-indictment delay pursuant to the Fifth Amendment's Due Process Clause, a defendant bears the burden of establishing: "(1) that the Government intentionally delayed bringing the indictment to gain some advantage over him; and [] (2) the intentional delay caused the defendant actual prejudice." *United States v. Ismaili*, 828 F.2d 153, 167–68 (3d Cir. 1987) (citing *Marion,* 404 U.S. at 325 and *Lovasco,* 431 U.S. at 789–90);[6] *Otto*, 742 F.2d at 107 (same); *United States v. Gouveia*, 467 U.S. 180, 192 (1984)

---

[6] *Marion* and *Lovasco* have created a circuit split on the proper standard for evaluating due process claims based on pre-indictment delay. *See Hoo v. United States*, 484 U.S. 1035, 1036 (1988) (discussing circuit split and listing cases); *see also* Michael J. Cleary, PRE–INDICTMENT DELAY: ESTABLISHING A FAIRER APPROACH BASED ON UNITED STATES V. MARION AND UNITED STATES V. LOVASCO, 78 Temp. L. Rev. 1049, 1059 (2005). In her Motion to Dismiss, Alexander uses the *Lovasco* standard, (Dkt. No 347 at 6-9), while the Government in its Opposition uses the *Marion* test. (Dkt. No. 392 at 5-12). The majority of circuits, including the Third Circuit, have used the *Marion* test, i.e., requiring a showing of intentional delay by the government to gain tactical advantage over defendant and actual prejudice. *See e.g.*, *Ismaili*, 828 F.2d at 167–68. However, a

(same); *see also Moncayo*, 1994 WL 594702 at *5 ("The defendant carries a heavy burden of persuasion."). Defendant must satisfy both prongs of the inquiry before dismissal is warranted. *Sebetich*, 776 F.2d at 430 ("To invoke the extreme sanction of dismissal of [an] indictment[] under the Due Process Clause, [a] defendant[] must prove 'that the government's delay in bringing the indictment was a deliberate device to gain an advantage over him and that it caused him actual prejudice in presenting his defense.'") (quoting *Gouveia*, 467 U.S. at 192).

It is well established that "[t]here is no requirement imposed by the Fifth Amendment which requires that a prosecutor seek an indictment the moment he has probable cause to believe that an accused is guilty." *Ismaili*, 828 F.2d at 168 (citing *Lovasco*, 431 U.S. at 791). As the Supreme Court has stated:

> [P]rosecutors are under no duty to file charges as soon as probable cause exists but before they are satisfied they will be able to establish the suspect's guilt beyond a reasonable doubt. To impose such a duty 'would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself.'

*Lovasco*, 431 U.S. at 791 (quoting *Ewell*, 383 U.S. at 120). Moreover, where the alleged criminal act involves multiple defendants committing numerous illegal acts, forcing a prosecutor to file charges as soon as evidence has been developed against one participant on one charge may cause significant problems:

> In some instances, an immediate arrest or indictment would impair the prosecutor's ability to continue his investigation, thereby preventing society from bringing lawbreakers to justice. In other cases, the prosecutor would be able to obtain additional indictments despite an early prosecution, but the necessary result would

---

minority of circuits, which this District Court joined in the early 1990's, uses the *Lovasco* standard, which involves a balancing test where a court is required "to determine whether the defendant has suffered actual substantial prejudice due to pre-indictment delay and [] to consider the Government's reasons for the delay and whether the length of the delay, when balanced against the reasons for the delay, 'violates those fundamental conceptions of justice which lie at the base of our civil and political institutions.'" *United States v. Benjamin*, 816 F. Supp. 373, 379 (D.V.I. 1993) (quoting *Lovasco*, 431 U.S. at 790). This Court will follow Third Circuit precedent by using the *Marion* test.

> be multiple trials involving a single set of facts. Such trials place needless burdens on defendants, law enforcement officials, and courts.

*Id*. at 793. In such cases, the Supreme Court has held that an "investigative delay" does not constitute the kind of delay that demonstrates that the Government has attempted to "gain tactical advantage over the [defendant][,]" so as to deprive a defendant of her due process rights, "even if [her] defense might have been somewhat prejudiced by the lapse of time." *Lovasco*, 431 U.S. at 795-96 (citing *Marion,* 404 U.S. at 324). According to the Supreme Court:

> Rather than deviating from elementary standards of 'fair play and decency,' a prosecutor abides by them if he refuses to seek indictments until he is completely satisfied that he should prosecute and will be able promptly to establish guilt beyond a reasonable doubt. Penalizing prosecutors who defer action for these reasons would subordinate the goal of 'orderly expedition' to that of 'mere speed' . . . This the Due Process Clause does not require.

*Lovasco*, 431 U.S. at 795-96 (internal citation omitted).

Further, what constitutes actual prejudice to warrant dismissal of the prosecution "will necessarily involve a delicate judgment based on the circumstances of each case." *Marion*, 404 U.S. at 325. "Actual prejudice to the defense of a criminal case may result from the shortest and most necessary delay; [but] no one suggest[s] that every delay-caused detriment to a defendant's case should abort a criminal prosecution." *Id*. at 324-5. While "[p]ossible prejudice is inherent in any delay," *id*. at 322, the Fifth Amendment's Due Process Clause requires dismissal of an indictment if the "pre-indictment delay [] caused substantial prejudice to [defendant's] rights to a fair trial." *Id*. at 324. "The mere possibility of prejudice inherent in any extended delay, or the mere possibility that a witness might become inaccessible and evidence be lost, is not sufficient." *Ismaili*, 828 F.2d at 168 (citing *Marion,* 404 U.S. at 315, 326).

Actual prejudice must be "substantial" and "specific," and cannot be speculative. *See Marion,* 404 U.S. at 310, 324-5; *Sebetich*, 776 F.2d at 430; *see also United States v. Roberts*, 2008

WL 3890409, at *1 (M.D. Pa. Aug. 19, 2008) ("speculative arguments [] are not sufficient to satisfy defendant's burden"); *United States v. Stradford*, 2008 WL 2275999, at *6 (D.N.J. May 30, 2008), *aff'd,* 394 F. App'x 923 (3d Cir. 2010) ("generalized allegations of prejudice are not sufficient to substantiate a claim that Due Process rights have been violated"). "[T]o show prejudice as a result of preindictment delay, the defendant must demonstrate, with specificity, that the delay resulted in the loss of exculpatory evidence, whether testimonial or documentary, that is not merely cumulative of evidence available from other sources." *United States v. Baxt*, 74 F. Supp. 2d 425, 434 (D.N.J. 1999) (citing *Ismaili,* 828 F.2d at 168–69; *Sebetich,* 776 F.2d at 430); *see also Pereira v. Gov't of Virgin Islands*, 2008 WL 5632270, at *4 (D.V.I. App. Div. Feb. 27, 2008), *aff'd,* 302 F. App'x 72 (3d Cir. 2008) ("To prove actual prejudice, a defendant must establish not only the impairment of a defense because of missing evidence, but also the availability of that evidence but for the delay, and its exculpatory nature were it now available."). Meanwhile, "loss of exculpatory evidence . . . [as a] form of prejudice . . . [is] the most serious [] because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Benjamin*, 816 F. Supp. at 379 (citing *Doggett v. United States*, 505 U.S. 647, 654 (1992)) (internal quotation marks omitted); *see also Moncayo*, 1994 WL 594702 at *5 (same).

As discussed below, Alexander fails to establish either intentional delay by the Government to gain a tactical advantage or actual prejudice. Accordingly, the Motion to Dismiss will be denied.

**2.     Analysis**

The Court finds that Alexander has failed to satisfy the first prong established in *Marion*. The record is bereft of evidence that the pre-indictment delay was intentional to gain a tactical advantage over Defendant. *See Sebetich*, 776 F.2d at 430 (no evidence that "delay was a deliberate tactical maneuver by the government"). Here, the Government provided a thorough accounting of

9

the investigatory events from July 2012—when the IRS received its tip from the SOI—to the Indictment in September 2016, making it clear to the Court that the Government did not intentionally delay matters. Rather the Court finds that the Government was conducting a sweeping investigation in support of the prosecution of 10 defendants allegedly involved in a network of tax fraud in the Territory.

According to the Government, during the four years it took to complete the investigation and bring the Indictment, the Government collected and reviewed voluminous records, including at least 500 tax returns; interviewed numerous individuals; and issued 29 subpoenas (including to at least 11 financial institutions for approximately 72 accounts spanning two years). (Dkt. No. 392 at 2-3). Further, contrary to Defendant's contention, the Court finds that the timing of events here plays a central role in establishing the absence of intentional delay by the Government. Following the IRS's receipt of information from the SOI in July 2012, the Government subpoenaed the bank records in November 2012, by which time the first set of video surveillance showing ATM withdrawals in October 2011 would already have been purged from Banco Popular's system in light of the bank's one-year retention policy. The bank records were provided to the Government in January 2013 in response to the subpoena. Thus, the earliest that the Government would have obtained bank records for analysis would have been in January 2013—one to two months before the February and March 2012 surveillance footage would have been purged by Banco Popular.

Further, while the IRS recommended prosecution of Alexander along with two other co-defendants in March 2015, it also notified the Government that it was anticipating referring additional defendants[7] Thus, the Government—as is its prerogative—deferred Alexander's

---

[7] The Government reports that in mid-March 2015, the IRS sent the U.S. Attorney's Office a letter recommending prosecution of Alexander and co-defendants Hughes and Young, but noted it was anticipating referring other defendants. (Dkt. No. 392 at 3).

prosecution until the IRS had completed its investigation and, as a result, was able to charge seven other individuals. There is simply nothing in the record to suggest—let alone establish—that the Government could or should have been prepared to bring an Indictment by January 2013 or that it intentionally delayed bringing an Indictment for another three and a half years in order to prevent Alexander from having access to surveillance footage that was either non-existent by the time that the Government received bank records or was on the verge of being purged.

In sum, the Court finds that the pre-indictment delay of which Alexander complains is not attributable to intentional conduct by the Government, but rather to the scope of the investigation conducted by the Government. *See e.g., United States v. Staton*, 605 F. App'x 110, 113 (3d Cir. 2015) (finding seven-year pre-indictment delay not intentional where delay was "attributable to the process of unraveling the [d]efendant's many fraudulent schemes."); *United States v. Robles*, 129 F. App'x 736, 738 (3d Cir. 2005) (affirming lower court's denial of defendant's motion to dismiss indictment because defendant "failed to produce evidence to support his claim that the Government's delay in issuing the indictment was intentional or to rebut the Government's assertion that the delay was merely a product of the Government's following up on leads produced by the investigation"). Such investigative delays do not give rise to a due process violation. *See Lovasco,* 431 U.S. at 796 (holding that "to prosecute a defendant following investigative delay does not deprive him of due process"). Thus, Alexander's claim of pre-indictment delay does not warrant dismissal of the Indictment under the circumstances here, and the Motion to Dismiss will therefore be denied. *Sebetich*, 776 F.2d at 430 (affirming district court's denial of defendants' motion to dismiss the indictments based on pre-indictment delay because defendants have "failed to establish that the delay was designed by the government to give some tactical advantage over [them]").

Because Defendant must show *both* intentional delay and actual prejudice, her failure to establish intentional delay is a sufficient basis upon which to deny the Motion, and the Court need not reach the issue of prejudice. *Id*. But even if the Court were to reach the prejudice issue, the Court finds that Alexander fails to satisfy this prong of the inquiry as well, because her claim of prejudice is speculative at best. *See id*. (noting that the court "has serious doubts as to whether the allegation[] of prejudice [here is] specific enough to constitute a showing of actual prejudice"); *United States v. Gross*, 1999 WL 1044843, at *5 (D.V.I. Nov. 5, 1999) (denying defendant's motion to dismiss the indictment in part because his "general and conclusory statements leave the court to speculate about . . . the information that his files contained . . .").

Alexander's claim of prejudice stems solely from a statement allegedly made by Agent Wagner during his interview with Alexander that he had "footage" of her. (Dkt. No. 347-4 at 2). Based on this alleged statement, Alexander states that she "*believed* that [Agent Wagner] had video footage that showed someone withdrawing the fraudulent refunds from [her Banco Popular] account and [she] knew the person making multiple withdrawals was not [her]." *Id*. at 3 (emphasis added).

The Court finds that Alexander's claim of prejudice is layered with speculation. First, there is her claim as to what the "footage" to which Agent Wagner allegedly referred showed, which is premised on nothing more than Alexander's "belief." Then there is Alexander's bare assertion that the footage showed something different than what she *assumed* Agent Wagner meant by his reference to "footage"—that is, that it showed somebody other than Alexander. In support of this assertion, Alexander offers only a conclusory statement that she "*knew* the person making multiple withdrawals was not me." (Dkt. No. 347-4 ¶ 6) (emphasis added). Of course, if the alleged footage was of Alexander, it would be inculpatory, not exculpatory evidence. Further, even if the alleged

footage showed someone other than Alexander, as she claims, it is highly speculative as to whether the footage would have offered any exculpatory evidence at all. According to the Government's investigation, Alexander's co-defendants described the mechanics of the tax fraud scheme as involving participants either withdrawing money themselves or allowing other co-conspirators access to their accounts to withdraw funds. (Dkt. No. 392 at 10-11). Thus, even if the alleged footage showed that it was not Alexander who made these withdrawals from her bank account, this does not establish that Alexander was not involved in the scheme. In other words, Alexander "cannot offer any 'proof' of prejudice but can only speculate" as to whether there would be any exculpatory value to the evidence. *See United States v. Newmark*, 2007 WL 839077, at *9 n.26 (E.D. Pa. Mar. 14, 2007) (denying defendant's motion to dismiss the indictment for pre-indictment delay as defendant "can only speculate as to what purportedly 'exculpatory' evidence may have existed.").[8] Defendant herself characterizes the evidence as "*potentially* exculpatory evidence." (Dkt. No. 347 at 9). In other words, the Court is ultimately left to guess what exculpatory value, if any, the surveillance footage would have. Accordingly, Alexander fails to sustain the "heavy burden" of showing actual prejudice to demonstrate a violation of her due process rights under the

---

[8] *Moncayo*, 1994 WL 594702 at *5 (denying defendant's motion to dismiss for prosecutorial delay where despite defendant's argument that an eight-year delay impaired his defense "by the dimming of memories and loss of [exculpatory] evidence," the court found his claim of prejudice "speculative"); *United States v. Cannistraro*, 800 F. Supp. 30, 57 (D.N.J. 1992) (finding that defendants did not make a showing of actual prejudice, even though a number of their potential witnesses had died during a substantial pre-accusation delay, because defendants did not establish that the witnesses' testimony would have been exculpatory); *see also Brown v. United States*, 2012 WL 6016886, at *3 (W.D. Pa. Dec. 1, 2012) ("Petitioner fails to allege anything more than speculative prejudice and, therefore, he does not meet his burden.); *Newmark*, 2007 WL 839077 at *9 (finding that defendant did not establish actual prejudice because "the [c]ourt would have to accept [defendant's] account of what [he claimed an 'exculpatory witness'] *would have said*, had he not died."); *United States v. Kale*, 1986 WL 8136, at *1 (E.D. Pa. July 14, 1986) ("actual prejudice is not shown simply by stating that an unavailable party *may* have had access to information and if that party had the information, it *might* have been useful to a defense.") (emphasis in original).

Fifth Amendment.[9]

Because Defendant cannot show either intentional conduct by the Government designed to gain a tactical advantage or actual prejudice as a result of the pre-indictment delay—both of which must be satisfied—the Court finds no violation of Defendant's due process rights as a result of the claimed pre-indictment delay. Thus, Alexander's Motion to Dismiss the Indictment on this basis will be denied.

### B. Spoliation

Alexander also argues that, in violation of her due process rights, the Government knowingly or recklessly failed to preserve exculpatory evidence, despite knowing its exculpatory value to Alexander. The Court finds Alexander's arguments unavailing and will thus deny her Motion to Dismiss on these grounds as well.

#### 1. Applicable Legal Principles

The importance of the Government's duty to preserve relevant evidence has long been recognized by the Third Circuit:

> Loss or destruction of relevant evidence by the government not only raises general questions of the fundamental fairness of a criminal trial but may also deny a defendant the right to compulsory process. The right to subpoena evidence at trial, and the obligation of the prosecutor to disclose exculpatory evidence are inherent in the conception of a criminal trial as a truth-seeking process. These rights and obligations may be undermined if the prosecution has no duty to preserve the evidence which it later must disclose.

*Gov't of Virgin Islands v. Testamark,* 570 F.2d 1162, 1166 (3d Cir. 1978). Thus, the government's

---

[9] The Court further notes that even if it had adopted the minority approach set out in *Lovasco*, which is used by Defendant in her Motion, the result would be the same. Defendant would still fail to establish that she has suffered actual substantial prejudice, for the reasons discussed above, and the length of delay when weighed against the Government's reasons for the delay–i.e., its investigation—does not "violate[] those fundamental conceptions of justice which lie at the base of our civil and political institutions," *Lovasco*, 431 U.S. at 790 (internal citations and quotations omitted), so as to warrant a finding of a constitutional violation and dismissal of the Indictment.

"failure to preserve potentially useful evidence," i.e., evidence which "could have been subjected to tests, the results of which might have exonerated the defendant," constitutes a denial of a defendant's due process rights when a defendant "can show bad faith on the part of the [government]." *Arizona v. Youngblood,* 488 U.S. 51, 57-8 (1988); *see also California v. Trombetta,* 467 U.S. 479, 487-91 (1984); *United States v. Ramos,* 27 F.3d 65, 69 (3d Cir. 1994).

The defendant has the burden "to show the prosecution's bad faith in ordering or permitting" the destruction of evidence. *United States v. Deaner,* 1 F.3d 192, 200 (3d Cir. 1993). To meet this burden, "under *Youngblood* and *Trombetta,* a defendant must show that the government: '(1) acted in bad faith when it destroyed the evidence, which (2) possessed an apparent exculpatory value and, which (3) is to some extent irreplaceable.'" *United States v. Jackman,* 72 Fed. Appx. 862, 866 (3d Cir. 2003) (internal citation and quotation marks omitted); *United States v. Sherman*, 293 F. App'x 158, 160 (3d Cir. 2008) (same); *see also Trombetta,* 467 U.S. at 488–89 (holding that the Due Process Clause is violated only when (1) there is "official animus . . . [or] a conscious effort to suppress exculpatory evidence," (2) the evidence "possess[es] an exculpatory value that was apparent before the evidence was destroyed," and (3) the evidence is "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.").

Bad faith may be established by showing that the government had knowledge of the exculpatory value of the evidence at the time it was lost or destroyed. *Yarris v. Cnty. of Del.,* 465 F.3d 129, 142 (3d Cir. 2006); *see also Jackman*, 72 F. App'x at 866 ("[b]ad faith, 'turn[s] on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed.'") (quoting *Youngblood,* 488 U.S. at 56 n.1); *United States v. Stevens*, 935 F.2d 1380, 1388 (3d Cir. 1991) (no bad faith finding where government did not know whether lost DNA evidence would

inculpate or exculpate defendant). "[T]he presence or absence of good or bad faith by the government will be dispositive." *Jackman*, 72 F. App'x at 866 (internal citation and quotation marks omitted).

2. **Analysis**

As it pertains to the first element under the *Youngblood/Trombetta* analysis, there is no evidence that the Government acted in bad faith and had a hand in destroying what it knew to be exculpatory evidence. *Yarris,* 465 F.3d at 142. Indeed, the destruction of the surveillance footage is not attributable to any direction from or action by the Government, but due to Banco Popular's standard practice of purging surveillance footage after one year. Nor can the Government be faulted for any inaction or lack of diligence on its part that contributed to the destruction of the footage under the circumstances here where the evidence was either already purged or on the verge of being purged when the Government received the subpoenaed bank records for analysis. *Trombetta,* 467 U.S. at 488 (holding that the Due Process Clause is only violated when there is "official animus . . . [or] a conscious effort to suppress exculpatory evidence."); *Youngblood,* 488 U.S. at 58 ("[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."). As previously discussed, the Government's actions here were justified by the timing and scope of its investigation. There is simply nothing in the record to indicate that the Government had the requisite bad faith to support a due process violation.[10] Thus, the Court finds that Alexander fails

---

[10] The fact that the Government attributes some of the delay to AUSA resource constraints does not alter this conclusion. *See e.g., United States v. Ladson*, 238 F. App'x 874, 876 (3d Cir. 2007) (affirming trial court's denial of defendant's motion to dismiss indictment due to a three-year pre-indictment delay despite the Government's admission that part of the delay was because prosecutors previously assigned to the case did not indict "because of other pressing responsibilities"); *see Sebetich*, 776 F.2d at 430 (finding that five-year pre-indictment delay did

to establish the first element of the *Youngblood/Trombetta* standard.

Second, as discussed above, the exculpatory value of the surveillance footage at issue is questionable at best because Alexander "has done nothing more than speculate . . . that the [surveillance footage] contained exculpatory evidence." *United States v. Robinson*, 855 F. Supp. 2d 419, 423 (E.D. Pa. 2012). Alexander's "mere suspicion" that the surveillance footage would exonerate her—especially in the face of the Court's findings above that whether the surveillance footage showed Alexander or someone else does not appear exculpatory—is insufficient to establish the evidence's "apparent exculpatory value." *Id*. at 423 (finding Defendant's due process claim meritless where the alleged exculpatory evidence, a 911 recording, was destroyed "because it is impossible to know whether the voice recording was exculpatory, or merely useful to the defense") (internal quotation marks omitted); *see also United States v. Taylor,* 379 Fed. Appx. 240, 244 (3d Cir. 2010) (rejecting destruction-of-evidence argument where the exculpatory nature of the evidence was "dubious at best"). Accordingly, Alexander also fails to establish the second element of the *Youngblood/Trombetta* standard.

Because Alexander has not sufficiently shown that the evidence was destroyed in bad faith and has only speculated as to how the surveillance footage may have been exculpatory, the Court concludes that Alexander's inability to have access to the surveillance footage did not deny her due process of law. Accordingly, Alexander's request to dismiss the Indictment based on the Government's alleged failure to preserve exculpatory evidence will be denied.

### C. Motion to Suppress and Request for Jury Instruction

Because Alexander asserts no other bases for relief besides the alleged constitutional

---

not rise to a due process violation despite the fact that delay was attributable to a mix-up between federal and state authorities as to who was actually prosecuting the case).

violations that the Court has rejected above, Alexander's alternative motion to suppress all evidence will be denied. Further, because Alexander has not established that the Government acted deliberately or recklessly in either delaying the Indictment or in failing to preserve evidence, the Court finds no basis to support an adverse inference jury instruction. Thus, Alexander's request for such a jury instruction will also be denied.

### III. CONCLUSION

For the foregoing reasons, Defendant's "Motion to Dismiss Due to Pre-Indictment Delay and Spoliation of Evidence" will be denied.

An appropriate Order accompanies this Memorandum Opinion.

Date: July 17, 2019                                  _____/s/_____
                                                     WILMA A. LEWIS
                                                     Chief Judge